IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEORGE KALMAN | : | CIVIL ACTION |
| v. | : | |
| PEDRO A. CORTES, et al. | : | NO. 09-684 |

MEMORANDUM

**Baylson, J.**                                                                                              **July 28, 2009**

Plaintiff has filed a civil rights action challenging the constitutionality of Title 15, Pa. Cons. Stat. §1303(c)(2)(ii) precluding the use of blasphemy in a corporate name on grounds that it violates the Establishment Clause and the Free Speech Clause of the First Amendment to the United States Constitution. Plaintiff, who attempted to include the word "hell" in the name of a corporation he was forming, challenges the statute both on its face and as applied, seeking a declaratory judgment that it violates his constitutional rights, a permanent injunction prohibiting Defendant from enforcing it against himself or anyone else, and an award of actual damages and attorney's costs. Presently before this Court is Defendant's Motion to Dismiss Plaintiff's Complaint—pursuant to Federal Rule of Civil Procedure 12(b)(3)—or to transfer the suit to the Middle District of Pennsylvania—pursuant to 28 U.S.C. §1406(a) on grounds that venue is not properly laid in the Eastern District of Pennsylvania. Finding that venue is proper in this district, the Motion will be denied.

**I.     Background**

      **A.     Facts and Procedural History**

On September 26, 2007, Plaintiff George Kalman, a resident of Downingtown,

Pennsylvania, applied to the Commonwealth of Pennsylvania, Department of State, Corporation Bureau ("Department of State"), for a Certificate of Organization—under 15 Pa. C.S. §8913—for the limited liability film production and distribution company which he founded. As the company's CEO, Plaintiff maintains his principal place of business in Downingtown, within this district. In his September 2007 application, Plaintiff sought to name his company "I Choose Hell Productions, LLC"[1], and to obtain the exclusive right to operate under this name. (Complaint ¶¶ 8-9). By a letter dated October 1, 2007, however, the Pennsylvania Department of State denied Plaintiff's application for violation of §1303(c)(2)(ii), which prohibits the incorporation of businesses under names that contain "[w]ords that constitute blasphemy, profane cursing or swearing or that profane the Lord's name." (Complaint ¶¶ 11-12). In this denial letter, John or Jane Doe—the Department of State employee who processed Kalman's application—quoted the specific statutory language of §1303 as the grounds for rejection. Doe returned the original application with this letter, and instructed Kalman to submit a "corrected filing" that requested a different business name. (Complaint ¶ 11). See Exhibit A.

Alleging that he needed to initiate his business, Plaintiff crossed out "I Choose Hell Productions, LLC" from his original application, replaced it with "I.C.H. Productions, LLC," and mailed the updated application to the Bureau on October 12, 2007. (Complaint ¶ 13). See Exhibit B. After receiving it on October 17, 2007, the Department of State certified "I.C.H. Productions, LLC" on December 3, 2007. (Complaint ¶¶ 14-15). Plaintiff has since operated his film company in Downingtown, Pennsylvania under this approved corporate name. (Complaint

---

[1] In his complaint, Kalman claims that he chose the name "I Choose Hell Productions, LLC" for philosophical reasons central to the expression of his films, namely his belief that suicide is a lesser alternative to struggling through difficult times: "even if life is 'hell,' it is better to choose hell than suicide." (Complaint ¶9).

¶¶ 4, 17). Nevertheless, he maintains his desire to operate under "I Choose Hell Productions, LLC," and would seek certification under this name if the Department of State were enjoined from enforcing §1303(c)(2)(ii). (Complaint ¶¶ 17-18). If Plaintiff chooses to ignore the Department of State's ruling and do business under his desired corporate name, he would be subject to an enforcement action brought by the Commonwealth's Attorney General.

Plaintiff filed his Complaint against Defendants on February 18, 2009. Defendants filed this Motion to Dismiss for Improper Venue, or Alternatively, to Transfer to the Middle District of Pennsylvania on April 16, 2009 (Doc. No. 4), to which Plaintiff responded on May 13, 2009 (Doc. No. 6). The Court held oral argument on July 23, 2009.

### B.     Parties' Contentions

Plaintiff is suing Doe and Pedro Cortes, the Secretary of the Commonwealth of Pennsylvania, in his official capacity of administering the Department of State, for the denial of his original application, as well as the subsequent operation of his business under the name "I.C.H. Productions, LLC." (Compl. ¶¶ 5, 6, 19). According to Plaintiff's Complaint, Doe was responsible for processing the original application, and Cortes' statutory responsibilities include the approval and licensing of business names according to the statutory rules laid out in §1303. (Compl. ¶ 5). Cortes is also specifically responsible for enforcing §1303(c)(2)(ii) and for incorporating it into administrative regulations. (Complaint ¶ 5). See 19 Pa. Admin. Code §17.5.

In its Motion to Dismiss, Defendant claims that venue is properly laid only in the Middle District of Pennsylvania because all the events giving rise to Plaintiff's suit occurred in Harrisburg, Dauphin County, which is located within that district's territorial boundaries. (Def.'s

Memo. Law Support Mot. Dismiss for Improper Venue at 5).  These events include the decision to reject Plaintiff's original application, and the "develop[ment], implement[ation] and enforce[ment]" of the challenged policy from Harrisburg.  (Def.'s Memo. at 7)(citing Declaration of Martha Brown, ¶ 3)[2].  Defendant argues that when a statewide policy is challenged, venue is proper only in the district where it was written, not the district in which its impact is felt.  (Def.'s Mem. at 6-7).  As such, the alleged effect that §1303 had on Plaintiff's ability to exercise his freedom of expression in this district is insufficient compared to the numerous "actions, decisions, policies and practices" that occurred in Harrisburg.  (Def.'s Memo. at 7-8).  Furthermore, the Defendant's convenience is considered in choosing venue, not the Plaintiff's. (Id. at 8).

    Plaintiff's response asserts that while the Middle District may be a proper venue for this suit, the Defendant's argument fails to refute that the Eastern District of Pennsylvania is also a proper venue.  (Pl.'s Memo. Law Opp'n to Def.'s Mot. at 6).  In support of this claim, Plaintiff states that several events occurred within the Eastern District of Pennsylvania, and are sufficient to vest proper venue here despite the development and implementation of the policy in the Middle District.  Id.  Specifically, Plaintiff's residence and principal place of business are in the Eastern District, (Compl. ¶ 4); he mailed his original application to register his business from his residence in the Eastern District, (Compl. ¶¶ 7-8, 11)(referencing Ex. A); he received the rejection letter in the same place, (Ex. A); he reapplied from the Eastern District under an alternate corporate name; he would be subject to an enforcement action in the Eastern District if

---

[2] Although the declaration—made by Martha Brown, Assistant Counsel for the Department of State—that Defendant has attached in support of this contention is outside the pleadings of this case, this Court will consider it in its decision.

he conducted business under his preferred name, see Pa. Cons. §1303(e); and, enforcement of this statute will continually affect his ability to operate his business under his desired name in the Eastern District. (Compl. ¶¶ 16 – 17, 19). In addition, litigating this case in the Eastern District would not be unfair to or inconvenient for the Defendant. (Pl.'s Memo. at 8).

**II.     Jurisdiction**

Since Plaintiff brought this action to vindicate his First Amendment civil rights under 42 U.S.C. §1983, this Court has jurisdiction pursuant to 28 U.S.C. §1331 and §1343.

**III.    Discussion**

   **A.     Legal Standard**

When a federal court's subject matter jurisdiction is based on a federal question instead of diversity of citizenship, venue is now—after the 1990 Amendment to 28 U.S.C. §1391—proper in: "(1) a judicial district where any defendant resides, if all defendants reside in the same State; (2) a judicial district in which a substantial part of the events of omissions giving rise to the claim occurred, . . . or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(b).

The leading Third Circuit case interpreting this venue provision in the present context is Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291 (3d Cir. 1994), in which the court reversed a finding that venue was proper in this district, and ordered the case be transferred to another district. In doing so, the court noted the 1990 amendment and its impact, as follows:

> The amendment changed pre-existing law to the extent that the earlier version had encouraged an approach that a claim could generally arise in only one venue. However, the current statutory language still favors the defendant in a venue dispute by requiring that the events or omissions supporting a claim be "substantial." Events or omissions that might only have some tangential

>connection with the dispute in litigation are not enough.  Substantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute.

36 F. 3d at 294.

The court further held that the test for determining venue is not the defendant's contacts with a particular district, but rather the location of those "events or omissions giving rise to the claim," and that although the statute no longer requires a court to select the "best" form, the weighing of "substantial" may at times seem to take on that flavor.  Id.

There are a number of district court opinions interpreting the venue statute in litigation with the state, and applying the standard as set forth in Cottman Transmissions.  Many of these cases find venue proper where a state policy originated, or is administered, but also discuss whether venue is proper where the plaintiff feels the "effects" or "impact" of the acts or omissions leading up to the litigation.  Several decisions in this district have held that the instance of an effect or impact in this district is not sufficient grounds to find venue.  See Chester v. Beard, 2008 WL 2310946, 8 (E.D. Pa. 2008) (Padova, J.) (challenge to constitutionality of Pennsylvania's lethal injection procedures) ("In cases such as this one, where plaintiffs challenge state-wide policies, and not merely the actions of state officials in a single county, venue is proper pursuant to Section 1391(b)(2) in the district where those policies are developed.").  Loeb v. Bank of Am., 254 F.Supp.2d 581, 587 (2003) (Brody, J.) (finding that voluminous correspondence with the Eastern District, telephone calls to the Eastern District, and economic harm that impacted the Eastern District was "woefully insufficient" to establish venue in this district).

However, other decisions discount the importance of venue where the policies were

adopted.  See Wilson v. Penn. State Police Dept., 1995 WL 129202, 2 (E.D. Pa. 1995) (Rendell, J.) ("[W]hile cases challenging state-wide polices may have closer ties with the district where such policies were adopted, such ties do not negate the propriety of venue in another district where other substantial events may have occurred.")

In a case in which the Philadelphia Office of the Attorney General was representing Pennsylvania, (as in this case), Judge Buckwalter of this Court relied on that fact as important for maintaining venue in this district.  See Fidelity Nat'l. Information Solutions, Inc. v. Sinclair 2003 WL 115588, 1 (E.D.Pa. 2003) (Buckwalter, J.) (relying on the fact that defendant would not be sufficiently inconvenienced by venue in this district since the Attorney General on the case is in Philadelphia).

It is important, perhaps most important, to consider the nature of the litigation in determining whether "substantial" events or omissions took place in a particular district.  The nature of the instant case is a first amendment challenge, and the curtailment of the plaintiff's asserted right took place in this district, without doubt.  A plaintiff suing because his freedom of expression has been unjustifiably restricted by a state statute suffers harm only where the speech would have taken place, as opposed to the district in which the statute was written and the decision to restrict this plaintiff's speech was made.  The suppression itself is a more "substantial" event than the decision to suppress the speech, and is the most important event in the origin of this suit.  Plaintiff's inability to exercise his freedom of expression by doing business under the name he desires is clearly "substantial."

The Court also notes that in the event if Plaintiff had decided to violate the statute in continuing business with the name that had been rejected, such an enforcement action would

clearly have to be brought in this district.  See § 1303(e).

Although no cases on point have been found, the Court respects those judges who have given less weight to the concept of "impact."  In a case brought on First Amendment grounds, impact becomes the most important part of the case.  Minimizing the impact of the statute, compared to its adoption or administration, would marginalize the Plaintiff's substantive First Amendment claims under the guise of a venue statute.

There is some support for this conclusion in another Opinion interpreting this statute by Judge Buckwalter, St. Germain v. Penn. Liquor Control Bd., 1999 WL 79500 (E.D. Pa. 1999), where plaintiffs were employees with the Board and alleged violation of procedural and substantive due process and equal protection rights, and also retaliation, due to their political affiliation under the First Amendment.  The defendants moved to transfer the case to the Middle District of Pa. because the Board's headquarters were located there, but Judge Buckwalter approved venue in this district because that is where plaintiffs "worked, spoke out, lived and were harmed," (emphasis added), and this constituted a "substantial part of the events" giving rise to their claims.

**IV.    Conclusion**

For these reasons, the Defendant's Motion to Dismiss for Improper Venue, or in the Alternative, to Transfer to the Middle District of Pennsylvania will be denied.

An appropriate Order follows.

O:\CIVIL 09-10\09-684 Kalman v. Cortes\Kalman - Memo Mot Change Venue.wpd