IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEORGE KALMAN, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| PEDRO A. CORTES, et al., | : | No. 09-0684 |
| Defendants. | : | |

**ORDER**

AND NOW, this      day of       , 2010, upon consideration of plaintiff's motion for summary judgment, it is hereby ORDERED that the Motion is DENIED.

BY THE COURT:

_____
Baylson, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEORGE KALMAN, | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| PEDRO A. CORTES, et al., | : | No. 09-0684 |
| | : | |
| Defendants. | : | |

**CORTES' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

The parties have filed cross-motions for summary judgment in this case in which George Kalman challenges the constitutionality of 15 Pa.C.S. § 1303(c)(2)(ii), which prohibits corporate names that contain "[w]ords that constitute blasphemy, profane cursing or swearing or that profane the Lord's name." Upon review of plaintiff's motion for summary judgment, defendant clarifies several essential points.

- There are no disputed issues of material fact and this case is ripe for final disposition on summary judgment.

- Plaintiff has not cited to any case anywhere that relates to the specific context at issue here. This case involves a State's authorization of corporate names which reflect very limited expression that are used only to identify the corporation for commercial purposes. Cortes maintains that the correct standard is commercial speech, which is afforded only limited First Amendment protection and may be regulated based on content.

- In the alternative, like the extremely limited message on vanity license plates, a corporate name is used merely for identification purposes and does not constitute expression for the

- sake of expression of religion, politics, social issues or other traditional applications of the First Amendment. To the extent that the State's discretion to issue vanity license plates is analogous, the statute and the Bureau's implementation pass constitutional muster if they are viewpoint neutral.

- This case is not about the twenty words on the Bureau's list which are plainly offensive, profane, insulting or obscene under contemporary community standards without any relation to theology, e.g., a*shole, bas**rd, bi**h, fag*ot, fu*k, sh*t. Plaintiff does not challenge the prohibition of these words in corporate names and agrees that they are "vulgarities with no apparent religious significance." Kalman Memorandum of Law in Support of Motion for Summary Judgment, at 6-7 ("Kalman Memo").

- With the aim of ensuring the constitutional implementation of the provision, counsel represents to the Court that the Bureau, in its discretion in implementing the provision, effective January 4, 2010, voluntarily removed the words "Christ," "God," "hell" and "Jesus" from its list of prohibited words in corporate names. See Exhibit I, hereto.[1]

## II. ARGUMENT

### A. The Statutory Restrictions Do Not Violate the Establishment Clause

The parties agree that Lemon v. Kurtzman, 403 U.S. 602, 612-13 (1971), remains the leading Establishment Clause decision. Plaintiff, however, misapplies the test to this matter.

At the outset, it is important to note that the Lemon test is written in the conjunctive; all three prongs must be satisfied if the statute is to be invalidated. County of Allegheny v. ACLU, 492 U.S. 573, 592 (1989). Plaintiff argues that that the statute fails the "secular purpose" prong because it has a religious purpose. Kalman Memo, at 10-12. This is not the test. Even if the

---

[1] Defense counsel contacted plaintiff's counsel on or about December 28, 2009 and advised him of this change and, on January 6, 2010, provided him with a copy of the document.

3

statute has a religious purpose, such would not suffice for the provision to fail this prong. The test is not whether the statute has <u>any</u> religious purpose but whether it has <u>any</u> secular purpose. A statute motivated only in part by a secular purpose satisfies this prong. <u>Wallace v. Jaffree</u>, 472 U.S. 38, 55 (1985); <u>Lynch v. Donnelly</u>, 465 U.S. 668, 688 (1984) (O'Connor, J., concurring) (upholding city's right to include a nativity scene in its annual Christmas display because under <u>Lemon</u> only a secular purpose is required, not that it be the only purpose).

At bar, Mr. Kalman offers no evidence of an exclusive religious purpose in the legislative language or history. On its face, the provision has a secular purpose and secular "principal or primary effect." Protection of the public from offensive, indecent and profane expression has long been considered a legitimate public interest that is considered separate and apart from any religious consideration, sphere or establishment. As <u>Chaplinsky v. New Hampshire</u>, 315 U.S. 568, 571-72 (1942), and <u>People v. Ruggles</u>, 8 Johns R. 290, 294 (N.Y. 1811), demonstrate, the State has a legitimate interest in maintaining order and morality within a civil society. Expression that is blasphemous, obscene, profane, or insulting may be prohibited because its very utterance is offensive and injurious to civil society, independent of any religious consideration. As the Supreme Court wrote in <u>Chaplinsky</u>, 315 U.S. at 571-72, in acknowledging that profanity is not protected speech, "such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." <u>See</u> <u>F.C.C. v. Pacifica</u>, 438 U.S.726, 748-50 (1978) (indecent language and profanity may be regulated over public airwaves). <u>Cf</u>. <u>Federal Communications Communications v. Fox Broadcasting</u>, 129 S.Ct. 1800, 1819 (2009) (references to excretory and sexual material "surely lie at the periphery of First Amendment concern"), <u>citing</u> <u>Pacifica</u>, 438 U.S. at 743.

4

As shown in Cortes' Memorandum of Law in Support of Motion for Summary Judgment ("Cortes Memo"), at 22-23, the statutory provision is intended to preserve the peace and maintain civil order by protecting Pennsylvania's citizens from language that is patently offensive, profane, insulting or obscene under contemporary community standards without any relation to theology or the sacred, e.g., a\*\*hole, bas\*\*rd, bi\*\*h, f\*ck. Certainly, "profane cursing and swearing" falls within this category of unprotected expression. These words are offensive without any relation to religion or theology, demonstrating that the primary motivation behind and effect of the provision is secular, not religious. Counsel would not utter any of these words in a courtroom, in chambers or in any civil setting.

The meanings of the words "blasphemy" or "profanity" are not limited to modifying something sacred, such as God, religion or a religious icon. The words also imply a prohibition on language that is obscene, vulgar or insulting. Responses of Defendant to Plaintiff's First Set of Interrogatories, no. 7, Exhibit C to Cortes Memo. Similarly, the explication of "profane cursing and swearing" is not limited to a religious context. "Cursing" means to "execrate in fervent terms." "Execrate" does not necessarily have a religious connotation; its definition is "1. to detest utterly; abhor; abominate. 2. to curse; imprecate evil upon; damn; denounce. 3. to utter curses." Id. See also Random House College Dictionary (Revised Ed. 1984). "Swearing," similarly, does not necessarily have a religious meaning. It is a synonym for "curse" and is defined disjunctively as using "profane or obscene language." Webster's 9th New Collegiate Dictionary (1986). Finally, while the third grouping of prohibited words, those "that profane the Lord's name," may have some connection to religion because it references "the Lord's name," its primary focus is on the verb "profane," which is not protected. Because profanity is unprotected whether it refers to "the Lord" or to one's neighbor, the reference to "the Lord" is thus

superfluous. This argument is strengthened by the Bureau's decision to remove the words "Christ," "God," "hell" and "Jesus" from the list of prohibited words in proposed corporate names. Because the purpose and effect of the provision is undoubtedly secular to an extent, the provision does not violate the Establishment Clause.

Finally, Lemon considers whether the challenged policy or practice "foster[s] an excessive government entanglement with religion." Lemon, 403 U.S. at 612-13. See Cortes Memorandum, at 21-24. Kalman does not argue that religious institutions are benefited, the State provides aid to religious institutions or there is relationship between the State and any religious authority, the recognized standard for assessing excessive government entanglement. See Agostini v. Felton, 521 U.S. 203, 233 (1997). Instead, he argues that excessive government entanglement can come in the form of government making decisions regarding religious doctrine or ideas. The cases cited by Kalman do not support this proposition and are distinguishable. Kalman Memo, at 13-14.

Presbyterian Church in the U.S. v. Mary E.B. Hill. Mem. Presbyterian Church, 393 U.S. 440 (1969), decided two years before Lemon, involved a church property dispute between two churches. Its holding is based not on the Establishment of Religion Clause but on the Free Exercise Clause. Based only on the latter Clause, the Supreme Court concluded that courts may not decide property disputes resolving underlying conflicts over "the interpretation of particular church doctrines and the importance of those doctrines to the religion." Id. at 449-50. Such a holding is not applicable in the instant case. Similarly, the proposition on which plaintiff relies in Tenafly Eruv Assoc. v. Borough of Tenafly, 309 F. 3d 144, 171 (3d Cir. 2002), is contained in the case discussion of the Free Exercise Clause and not the Establishment Clause. As Tenafly Eruv Assoc. makes clear, the two Clauses have different and separate standards. Id. at 165-177.

Moreover, in the Establishment Clause discussion of Tenafly Eruv Assoc., not cited by Kalman, the Third Circuit did not apply the Lemon test but, instead, applied the endorsement test developed by Justice O'Conner in concurring in Lynch, 465 U.S. at 687. Kalman does not argue the application of the endorsement test.[2] Further, according to the Third Circuit, "entanglement" still matters only in the context of direct aid to parochial schools, where the Court subsumes it within the "effect" analysis, and in the rare case where government delegates civic power to a religious group. See Tenafly Eruv Assoc., 309 F. 3d at 174 n. 36 (citations omitted). Neither situation applies here.

Petruska v. Gannon Univ., 462 F. 3d 294, 311 (3d Cir. 2006), about a former chaplain's breach of contract claim against the University, is also not germane. Petruska focuses on the ministerial exception to Title VII arising under the Free Exercise Clause. It only briefly mentions the Establishment Clause and the Circuit concluded that reviewing the breach of contract claim would not unconstitutionally entangle the court in religion. Id. at 311. Finally, LeBoon v. Lancaster JCC, 503 F. 3d 217, 230 (3d Cir. 2007), which reflects no Establishment Clause challenge, presents only the most cursory reference to Lemon within the context of a Title VII claim alleging employment discrimination based on religion.

Even applying the entanglement prong, now that the Bureau has removed the words "Christ," "God," "hell" and "Jesus" from the list of prohibited words, there can be no doubt that there is no excessive government entanglement with religion. The Bureau, in reviewing applications for corporate names, does not look for words that might conceivably be related to religion or theology and will not need to make any decisions about words relating to religion or

---

[2] The endorsement test dispenses with the "entanglement" prong of the Lemon test and collapses its "purpose" and "effect" prongs into a single inquiry: "would a reasonable, informed observer, i.e., one familiar with the history and context of private individuals' access to the public money or property at issue, perceive the challenged government action as endorsing religion?" Tenafly Eruv Assoc., 309 F. 3d at 174.

7

religious words or symbols. Its task will be limited to looking for the plainly vulgar, profane or obscene words that remain on the list. Restricting the use of this language cannot constitute an excessive entanglement with religion because there will be no religious consideration whatsoever when the Bureau reviews corporate applications. As a result, the purpose and effect of the provision remains to preserve the peace and social interest in civil order by prohibiting offensive language in a context where there is public exposure and the state's imprimatur. See Agostini, 521 U.S. at 233.

B.     Section 1303(c)(2)(ii) Does Not Violate The Free Speech Clause

   1.     Section 1303(c)(2)(ii) is Viewpoint Neutral

Cortes does not dispute that the selection or rejection of a corporate name may implicate First Amendment interests. Kalman is wrong, however, when he assumes, without any justification or analysis, that all government restrictions on speech must survive the strict scrutiny standard. Kalman Memo, at 18. To the extent that the principal type of expression at issue here is commercial speech and the restrictions in 15 Pa.C.S. § 1303(c)(2)(ii) are appropriately tailored to serve a legitimate end, the First Amendment is not violated.

Even outside of commercial speech, the level of scrutiny depends upon the nature of the forum, which principle plaintiff fails to discuss. Within traditional and designated public forums--not addressed by plaintiff--state restrictions get strict scrutiny. Good News Club v. Milford Cent. Sch., 533 U.S. 98 (2001). Other speech is considered under the rubric of "nonpublic forum." Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 46 (1983). Restrictions on speech within a nonpublic forum must only not discriminate on the basis of viewpoint and "must be reasonable in light of the forum's purpose." Id.

By the Bureau's removal of the words that have any religious connotation, there can be no doubt that the statutory provision and implementation are viewpoint neutral. They prohibit only names containing profanity, regardless of whether that language is associated with theology and the sacred or not so associated. Cortes Memo, at 18-19. The statutory provision and its implementation seek to preserve the peace and maintain civil order by protecting Pennsylvania's citizens from language that constitutes a nuisance under contemporary community standards without any relation to religion or theology. Such words are unprotected under the First Amendment. Chaplinsky, 315 U.S. at 571. Surely this is a reasonable restriction in light of the statute's purposes of identifying and regulating commercial enterprises that require a state imprimatur.

### 2.   § 1303(c)(2)(ii) Does not Constitute an Unconstitutional Prior Restraint

Kalman claims that, as a licensing statute section 1303(c)(2)(ii), constitutes an unconstitutional prior restraint because it grants unbridled discretion to the Bureau. This is wrong both on the law and on the application to the facts at bar.

Kalman's cited cases are not applicable because they relate to facial challenges to statutory or regulatory language that granted literally unbridled discretion to administrators to grant or deny a license or permit to engage in quintessentially expressive activity in traditional public forums. City of Lakewood v. Plain Dealer Publishing, 486 U.S. 750, 757 (1988), involved a newspaper's facial challenge to a city ordinance that granted the mayor total authority to grant or deny applications for a permit to place a news rack on public property in order to distribute the newspaper, activity protected by the Freedom of Press Clause. Forsysth County v. Nationalist Movement, 505 U.S. 123, 133 n. 10 (1992), involved an ordinance that granted limitless discretion to vary the fee for assembling or parading on public property, also quintessentially

9

public expressive activities that occur within the archetypal public forum. Kunz v. New York, 340 U.S. 290 (1951), similarly, implicated a police commissioner's unbridled discretion to deny a permit to hold public worship meetings on streets. Finally, Burstyn v. Wilson, 343 U.S. 495 (1952), related to a rule censoring the making and content of films, quintessentially protected activities, that were considered "sacrilegious."

Kalman's other cases relate to state proscriptions of certain language on vanity license plates and are distinguishable. Lewis v. Wilson, 253 F. 3d 1077 (8th Cir. 2001), holds that the statutory phrase "contrary to public policy" gives the state "nearly unfettered discretion in choosing what license plates should be rejected and in deciding what alleged 'public policy' supports its decision." Id. at 1080. That undefined and vague phrase, however, is not at issue here. As the cases cited in Cortes Memo, at 25-30, reflect, profane language is not protected by the First Amendment and has a sufficiently clear historical and contemporary meaning to impose limitations in its application. Ironically, the statute in Lewis, also barred personalized license plates that are "obscene" or "profane," but those prohibitions were not challenged. Id. at 1078. Moreover, the court did not determine what kind of forum, if any, a personalized license plate may be. Id. at 1079. Instead, the court relied on cases such as City of Lakewood, Forsysth County and Cox v. State of Louisiana, 379 U.S. 536 (1965), that involve regulations requiring a speaker to obtain official permission to engage in quintessentially First Amendment expressive activity, such as parades and assemblies, on traditional public forums. Id. at 1079-80. The other case Kalman relies upon, Roach v. Stouffer, 560 F. 3d 860 (8th Cir. 2009), merely holds that the regulatory scheme for specialty license plates provided no standards whatsoever and permitted unbridled administrator discretion when reviewing the license plates.

In contrast to those cases, Pennsylvania officials do not have unfettered discretion to prohibit corporate names that might merely be displeasing to the government for any reason or for no reason. On its face, § 1303(c)(2)(ii) prohibits only names that contain words that constitute unprotected speech. The statute specifically prevents the Bureau from exercising its discretion in an unfettered fashion that would lend itself to content or viewpoint discrimination. While the statutory words may have some religious connotation, they also have a sufficiently clear legal and historical meaning that imposes limitations on the Bureau's application and that is separate and apart from any religious connotation. As the court wrote in Tallman v. U.S., 465 F.2d 282, 286 (7th Cir. 1972), the word "profane" "is also construable as denoting certain of those personally reviling epithets naturally tending to provoke violent resentment or denoting language which under contemporary community standards is so grossly offensive to members of the public who actually hear it as to amount to a nuisances." See Karp v. Collins, 310 F. Supp. 627, 638 (D. N.J.), rev'd on other grounds, sub nom, Kugler v. Karp, 401 U.S. 930 (1971).

Moreover, as argued in Cortes' Memo, at 15-19, Kalman's proposed corporate name may constitute speech, but only barely. The purpose of having a corporate name is not to engage in expressive activity, such as assembling, parading or making movies, but to identify a regulated commercial business. Expression of his personal beliefs is, at best, only incidentally related to his corporate name. Kalman has, of course, been free to operate his movie production company under a different name, ICH Productions, in order to express his personal views and beliefs through his films. He remains free to make, distribute and sell his movies without limitation and to show them on his website. This case is not about censorship of Mr. Kalman's movies or the content of his films. It is only about the name of his commercial enterprise. In light of the State's elimination of the words that relate to religion on the list, the statute does not restrict any speech

11

which is not a legitimate subject of regulation. Because "profane" is considered unprotected language, the court should afford the statute "a construction to bring [it] in harmony with constitutional requirements." Tallman, 465 F.2d at 285. As written, the fair construction of 15 Pa.C.S. § 1303(c)(2)(ii) is that it does not extend to protected speech and is not overbroad.

### 3. The Provision is Not Void for Vagueness

Cortes relies on the arguments asserted in his initial Memorandum that the statutory language at issue here contains words which have by their frequent use and application established an understanding of their meaning definite enough to withstand a vagueness challenge. Cortes Memo, at 27-30. Still, he emphasizes several points.

Many of the cases cited by Kalman are in the criminal context in which violation of a blasphemy statute can result is punishment, such as prison or monetary fine. The stakes are high. In contract, in the present civil context, if a corporate name is rejected as violative of § 1303(c)(2)(ii), the applicant may simply reapply with a new name or, if not so desired, seek refund of the filing fee. See San Filippo v. Bongiovanni, 961 F.2d 1125, 1135 (3d Cir.1992) (in civil context, statutes need not be as precise as in the criminal context and are, therefore, less likely to be invalidated under a void-for-vagueness challenge). The void for vagueness inquiry is completed on a case-by-case basis and the party opposing the statute or standard must show that it is vague as applied to him. San Filippo, 961 F.2d at 1136. "Hell" is no longer a prohibited word.

Finally, now that the Bureau has eliminated words with any religious connotation from the list, the remaining twenty words all undoubtedly constitute profanity. None of the remaining words would be welcome in a courtroom, in chambers, in any civil setting or to one's mother or children and withstand a vagueness challenge

12

### III.     CONCLUSION

For these reasons, defendant requests that this Court deny plaintiff's motion for summary judgment.

                                                                           THOMAS W. CORBETT, JR.
                                                                           ATTORNEY GENERAL

                                                                           BY: /s/ Barry N. Kramer
                                                                           BARRY N. KRAMER
                                                                          Chief Deputy Attorney General

Office of Attorney General
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107-3603
Telephone: (215) 560-1581
Fax:    (215) 560-1031

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEORGE KALMAN, | : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | |
| PEDRO A. CORTES, et al., | : | No. 09-0684 |
| Defendants. | : | |

**CERTIFICATE OF SERVICE**

    I, Barry N. Kramer, hereby certify that on January 19, 2010, Cortes' Memorandum of Law In Opposition To Plaintiff's Motion for Summary Judgment was filed electronically and is available for viewing and downloading from the Court's Electronic Case Filing System.  The ECF System's electronic service of the Notice of Electronic Case Filing constitutes service on all parties who have consented to electronic service.

Thomas H. Lee, II
Matthew Bleich
Dechert Price Rhoads
2929 Arch Street, CIRA Center
Philadelphia, PA 19104

Mary Catherine Roper
ACLU Of PA
PO Box 40008
Philadelphia, PA 19106

Jeffrey I. Pasek
Cozen and O'Connor
1900 Market Street, 4th Floor
Philadelphia, PA 19103

                                                       BY:   /s/ Barry N. Kramer
                                                                     Barry N. Kramer